UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.M., a minor,<br><br>               **Plaintiff**<br><br>               **v.**<br><br>**PARLIER UNIFIED SCHOOL DISTRICT, CITY OF PARLIER, OFFICER NEIL O'BRIEN, and GEORGE ALVARADO,**<br><br>               **Defendants** | CASE NO. 1:21-CV-0261 AWI BAM<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS**<br><br>(Doc. No. 19) |

    This civil rights action stems from an encounter between minor Plaintiff J.M. and Defendant Police Officer Neil O'Brien ("O'Brien") at J.M.'s school, Parlier High School. J.M. alleges claims under 42 U.S.C. § 1983 for violations of the Fourth Amendment and Fourteenth Amendment and *Monell* liability, battery, intentional infliction of emotional distress, and negligence. Currently before the Court is Defendant George Alvarado ("Alvarado")'s Rule 12(b)(6) motion to dismiss. For the reasons that follow, the motion to dismiss will be granted with leave to amend.

## **RULE 12(b)(6) FRAMEWORK**

    Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In

reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960. If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon, 828 F.3d at 842.

**FACTUAL BACKGROUND**

From the Complaint, on August 27, 2019, J.M. was attending Parlier High School. That day, J.M. was sent to the office of Alvarado, the principal of Parlier High School. J.M. was sent to Alvarado's office for allegedly being disruptive in class. J.M. had an Individualized Education Plan due to learning disabilities and ADHD.

At Alvarado's office, Alvarado did not contact J.M.'s mother, but J.M. attempted to call

2

his mother on his cell phone. J.M. asked if he was permitted to step into the hallway to call his mother, and was instructed by office staff that he must remain in the office to make the call. While J.M. was speaking to his mother on the phone in Alvarado's office about his circumstances, O'Brien arrived at Alvarado's office after being summoned by Alvarado. O'Brien was employed by Defendant City of Parlier ("the City") as a police officer and was acting as the School Resource Officer at Parlier High School allegedly under the direction of Alvarado.

Upon his arrival, O'Brien yelled at J.M. to hang up the phone, to which J.M. replied that he was speaking to his mother. O'Brien then took the cell phone from J.M. by force, violently pulling the phone away from J.M. and throwing J.M. against a counter. O'Brien then handcuffed J.M. Apparently other unknown City police officers responded to the scene and joined in "verbally intimidating" J.M. The Complaint alleges that O'Brien's conduct was racially motivated.

Alvarado as the final authority over student discipline was present in the office and could see and hear O'Brien's actions toward J.M. Alvarado allegedly "ratified" O'Brien's conduct by witnessing O'Brien's conduct and "approving of it," refusing to contact J.M.'s mother, approving of O'Brien's removal of J.M.'s access to his mother by ripping the cell phone out of his hand, and tacitly approving O'Brien's "battery" of J.M. by not taking steps to object to O'Brien's conduct. Alvarado allegedly placed J.M. in danger and subsequently failed to protect him from harm by a school resource officer acting under Alvarado's authority.

J.M. was forced to receive instruction outside of Parlier High School as a result of the incident with O'Brien. J.M. suffered anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

## DEFENDANTS' MOTION

*Defendant's Arguments*

Alvarado argue that the allegations suggest that J.M. is suing Alvarado in his official capacity. However, California school officials sued in their official capacities are arms of the state and thus, entitled to Eleventh Amendment immunity.

Alvarado also argues that J.M. fails to plead facts establishing a § 1983 claim based on excessive force. He did not use any force himself and cannot be held liable under a supervisory liability theory. Alvarado and O'Brien are employed by separate entities, and there are no facts establishing that Alvarado was a supervisor of O'Brien. Moreover, the allegations do not demonstrate personal involvement in excessive force, a causal connection between any wrongful conduct and excessive force, or ratification. Alternatively, Alvarado argues that he is entitled to qualified immunity. J.M. pleads only that Alvarado did not call J.M.'s mother and watched O'Brien allegedly batter/commit excessive force against J.M. There is no clearly established law that would put Alvarado on notice that it is unconstitutional to either not call J.M.'s mother or take affirmative action against O'Brien.

With respect to the negligence claim, Alvarado argues that he breached no duty. There is no duty to call a student's mother when the student is summoned to the principal's office, nor is there a duty to not summon a School Resource Officer. Alternatively, Alvarado argues that he is entitled to immunity under Gov. Code § 820.8 and § 820.2. The allegations against Alvarado concern student discipline, which are discretionary matters within the scope of § 820.2.

Alvarado also argues that he is immune under 21 U.S.C. § 7946. J.M.'s claims are expressly based on alleged conduct performed in connection with student discipline after student J.M. was sent to Alvarado's office for being disruptive, i.e. a disciplinary situation.

Alvarado also argues that *Noerr-Pennington* immunity protects petitioning activity including acts "sufficiently related to petitioning activity" and "conduct incidental to the prosecution of a lawsuit." The immunity applies to petitioning activity directed at courts, administrative agencies, and other government agencies. The complaint alleges that Alvarado summoned O'Brien after J.M. was sent to Alvarado's office for being disruptive. This is petitioning activity and is immune.

Finally, Alvarado argues that J.M.'s request for punitive damages should be dismissed because no factual allegations demonstrate an evil motive or a reckless indifference to J.M.'s rights. Moreover, California law does not permit punitive damages for negligence. Therefore, the punitive damages allegation against Alvarado should be dismissed.

4

*Plaintiff's Opposition*

J.M. argues that dismissal is inappropriate. Alvarado is sued in his personal capacity, not his official capacity so there is no Eleventh Amendment immunity at issue. With respect to excessive force, the right for students to be free from excessive force is well established. Alvarado is liable as O'Brien's supervisor. Alvarado set in motion a series of acts which he reasonably should have known would cause O'Brien to inflict harm on J.M. when he summoned O'Brien to deal with J.M.'s behavior. Alvarado directed O'Brien to intervene in J.M's attempt to speak with his mother and then failed to prevent O'Brien from ripping away the cell phone and battering J.M. Qualified immunity is not appropriate. It would be obvious that the force used against J.M. was excessive considering that J.M. was a 16 year old boy whose infraction at the time of the battery was calling his mother. Further, the immunity under 20 U.S.C. § 7946 does not apply because the harm suffered by J.M. was caused by Alvarado's gross negligence, reckless misconduct, or conscious, flagrant indifference to J.M.'s rights or safety. Alvarado was involved in the battery as a supervisor, set in motion the events that led to the battery, and failed to stop it. Further, the *Noerr-Pennington* doctrine does not apply because the conduct at issue does not relate to the exercise of any constitutional right to petition the government.

With respect to negligence, it is well established that school personnel owe students under their supervision a protective duty of ordinary care, including protection from third parties. O'Brien acted under the direction of Alvarado. Instead of taking steps to protect J.M., such as attempting to de-escalate, provide support for J.M., or allow J.M. to continue to obtain his own support from his mother, Alvarado set in motion that were likely to harm J.M. and did not intervene. Further, no immunity is appropriate. Gov. Code § 820.8 does not apply because the claims against Alvarado are based on his own supervision and negligence. Gov. Code § 820.2 does not apply because that immunity only applies to quasi-legislative policy decisions, not to disciplinary decisions by a principal.

Finally, J.M. argues that there are sufficient allegations to show a callous or reckless disregard for his rights by Alvarado. Alvarado knew or should have known that O'Brien would batter J.M. and then did not intervene to stop O'Brien's battery.

*Discussion*

1. Fourth Amendment Claim

   a. Official Capacity

The parties dispute whether there are 42 U.S.C. § 1983 official capacity claims alleged against Alvarado. For two reasons, there are not. First, the Complaint does not explicitly state whether individual capacity or official capacity claims are being pursued. Under such circumstances in federal court, § 1983 claims are generally presumed to be brought as individual capacity claims. See Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir. 1999). Second, J.M. has expressly clarified that there are no official capacity claims against Alvarado. See Doc. No. 21 at 5:3-4. The Court sees no reason not to accept J.M.'s clarification. Therefore, the Court reads the Complaint as containing only individual capacity § 1983 claims against Alvarado.

   b. Supervisory Liability

Supervisors may not be held vicariously liable under § 1983 for the constitutional violations inflicted by their subordinates. Lemire v. California Dept. of Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013); Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989). Rather, a "supervisor may be liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Keates, 883 F.3d at 1242-43; Hansen, 885 F.2d at 646. "The requisite causal connection may be established when an official sets in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional harms." Vazquez v. County of Kern, 949 F.3d 1153, 1166 (9th Cir. 2020); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). As such, the Ninth Circuit has recognized that a supervisor may be liable: (1) for his own culpable action or inaction in the training, supervision, or control of his subordinates; (2) for his acquiescence in the constitutional deprivations of which the complaint is made; or (3) for conduct that showed a reckless or callous indifference to the rights of others." Keates, 883 F.3d at 1243; Lemire, 726 F.3d at 1074. If a subordinate's actions do not violate the Constitution, then the supervisor will not be liable. Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998).

J.M.'s individual capacity claims against Alvarado are based on Alvarado being O'Brien's supervisor. In relevant part, the Complaint alleges that: O'Brien was a police officer and employee of the City, O'Brien was acting as a School Resource Officer under the direction of Alvarado and Parlier Unified School District ("PUSD"), Alvarado was in a position of authority over O'Brien, Alvarado summoned O'Brien while J.M. was talking to his mother on the phone, Alvarado directed O'Brien to address whatever concerns Alvarado had about J.M.'s conduct, and Alvarado knew that O'Brien may batter J.M. See Complaint ¶¶ 5, 7, 9, 21.

These allegations demonstrate that O'Brien is a police officer who is in some aspect supervised by the City as an employee. The allegations also indicate that O'Brien as a School Resource Officer is under the authority of PUSD. The parties cite no case law or other authority that establishes the precise relationship or possible relationships between a school resource officer and a school district. In particular, the parties cite no cases or statutes that address what authority a principal or other school official has over a school resource officer who is a police officer assigned to a school by his employing police force. The Court is unaware of any cases that have discussed a principal or other school official's ability or authority to supervise a school resource officer employed by a city police department.

Some courts have concluded that a school resource officer is considered a "school official" when evaluating the constitutionality of a search or detention of a student by the resource officer. E.g. In re K.J., 18 Cal.App.5th 1123, 1131 (2018); In re K.S., 183 Cal.App.4th 72, 80 (2010); but see State v. Meneese, 282 P.3d 83, 86-87 (Wash. 2012). However, police officers who are assigned to a school as a school resource officer have the responsibility to help to provide a safe and secure environment for students and faculty while at the school. See In re A.R., 2015 Cal.App.Unpub. LEXIS 1795, *3 (2015);[1] In re Joseph F., 85 Cal.App.4th 975, 979 (2000). This can include addressing crimes that happen on campus. In re K.J., 18 Cal.App.5th at 1131. Courts have recognized that the "relationship between a student and the campus resource officer is no different than that between a student and [a responding] backup [police] officer merely because

---

[1] The Court may consider unpublished California appellate decisions as persuasive authority. Employers Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); Robles v. Agreserves, Inc., 158 F.Supp.3d 952, 976 n.12 (E.D. Cal. 2016).

one is assigned to work at the school and the other is not." Id. In other words, a resource officer like O'Brien remains a police officer, irrespective of his status as being assigned to a school as a school resource officer. If the Court accepted that O'Brien was a school official for purposes of evaluating the legality of a search or detention, i.e. for purposes of determining whether O'Brien violated the Constitution, that would not necessarily answer the question of whether a principal or other school official had the authority to supervise the resource officer. While the Court has no doubt that a police sergeant could order a police corporal to ignore possible criminal conduct, it seems doubtful that a principal could issue a similar order to a school resource officer who witnesses possible criminal conduct on a school campus. That is, it is doubtful that a non-law enforcement official like a principal could supervise or direct the law enforcement functions or activities of a school resource officer. Cf. Meneese, 282 P.2d at 86-87 (recognizing that under Washington law a principal is not a law enforcement officer).

Ultimately, the Court concludes that the allegations do not plausibly indicate that Alvarado was O'Brien's supervisor or that Alvarado had the ability to direct O'Brien's law enforcement conduct. O'Brien's law enforcement status and apparent obligation to address crime and maintain security and safety would seem inconsistent with Alvarado, a non-law enforcement official, having the ability to direct and supervise O'Brien. That O'Brien followed a request by Alvarado does not mean that O'Brien was obligated to follow all requests or directions by Alvarado. Therefore, in this context, the Court finds the allegation that PUSD and/or Alvarado had the authority to direct O'Brien to be too conclusory. In his opposition, J.M. indicates that he can amend his complaint to include allegations that there is an agreement between PUSD and the City that gave Alvarado authority over O'Brien. See Doc. No. 21 at 5 n.2. While this argument does not save the supervisory liability claims, it indicates that amendment may not be futile. See Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). Therefore, the Court will dismiss the Fourth Amendment claim against Alvarado with leave to amend to include allegations that address Alvarado's ability to supervise O'Brien.

Additionally, apart from Alvarado's ability to supervise or direct O'Brien, J.M. appears to be contending that Alvarado knew or should have known that summoning O'Brien would lead to a

8

battery or the use of excessive force by O'Brien against J.M. However, there is no further elaboration of this point either in the opposition or in the Complaint. The function of a school resource officer is to ensure the safety of faculty and staff. The Court agrees with Alvarado that there is no support for the proposition that Alvarado knew or should have known that O'Brien would use unreasonable force against J.M., or that Alvarado improperly set events in motion that led to the unreasonable use of force against J.M., by merely summoning O'Brien. Summoning a school resource officer would seem to be something that would help maintain safety and order, not hinder it. If J.M. wishes to classify Alvarado's act of summoning O'Brien to the office as somehow improper or a basis for supervisory liability, additional allegations are needed. J.M. needs to include allegations that explain why summoning O'Brian constituted wrongful conduct or why Alvarado knew or should have known that summoning O'Brian would lead to a battery/excessive force.

### c.   Qualified Immunity

Qualified immunity applies when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. White v. Pauly, 137 S. Ct. 548, 551 (2017). Officers are entitled to qualified immunity under § 1983 unless (1) the officers violate a federal a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." District of Columbia v. Wesby, 138 S.Ct. 577, 589 (2018); White, 137 S.Ct. at 551. "Clearly established" means that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful. See Wesby, 138 S.Ct. at 589; Vos v. City of Newport Beach, 892 F.3d 1024, 1035 (9th Cir. 2018). This is a "demanding standard" that protects "all but the plainly incompetent or those who knowingly violate the law." Wesby, 138 S.Ct. at 589 (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)). To be "clearly established," a rule must be dictated by controlling authority or by a robust consensus of cases of persuasive authority. Id.; see also Perez v. City of Roseville, 882 F.3d 843, 856-57 (9th Cir. 2018) (noting that Ninth Circuit precedent is sufficient to meet the "clearly established" prong of qualified immunity). In examining whether a rule/right is clearly established, courts are to define the law to a "high degree

of specificity," and not "at a high level of generality." Wesby, 138 S.Ct. at 590. The key question is "whether the violative nature of particular conduct is clearly established" in the specific context of the case. Vos, 892 F.3d at 1035 (quoting Mullenix v. Luna, 136 S.Ct. 305, 308 (2015)). Although it is not necessary to identify a case that it is "directly on point," generally the plaintiff needs to identify a case where an officer acting under similar circumstances was held to have violated federal right. Vos, 892 F.3d at 1035; Shafer v. City of Santa Barbara, 868 F.3d 1110, 1118 (9th Cir. 2017). Whether a constitutional right was violated is generally a question of fact for the jury, but whether a right was clearly established is a question of law for the judge. Morales v. Fry, 873 F.3d 817, 823 (9th Cir. 2017).

Here, the Court has determined that no plausible § 1983 claim has been alleged against Alvarado. Until a plausible claim is pled and the affirmative defense reasserted, the Court expresses no opinion on whether qualified immunity is appropriate.

  2. Negligence

    a. Pleading Sufficiency

In California, "[i]n order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation, and damages." Conroy v. Regents of the Univ. of Cal., 45 Cal.4th 1244, 1250 (2009); see Regents of Univ. of Cal. v. Superior Ct., 4 Cal.5th 607, 618 (2018). A duty exists only if the plaintiff's interests are entitled to legal protection against the conduct of the defendant. Brown v. USA Taekwondo, 11 Cal.5th 204, 213 (2021).

In this case, the Complaint alleges two negligent acts by Alvarado: (1) failing to contact J.M.'s mother, and (2) failing to adequately supervise O'Brien.

With respect to the negligent supervision theory, no plausible claim is stated. The claim necessity presumes that Alvarado had the ability to supervise O'Brien, particularly in O'Brien's interactions with J.M. However, as discussed above, the Complaint does not plausibly allege that Alvarado had that ability. If Alvarado was not O'Brien's supervisor or did not have the ability to supervise or direct O'Brien's interactions with J.M., then Alvarado could not negligently supervise O'Brien. Essentially, for the same reason the § 1983 claim fails, this negligence theory against Alvarado also fails.

With respect to negligence in failing to contact J.M.'s mother, there are a number of problems with this theory. J.M. cites no authority and offers no analysis regarding whether Alvarado owed J.M. a duty to contact J.M.'s mother after J.M. was sent to Alvarado's office for disciplinary reasons. Without more from J.M., the Court is unwilling to hold that a principal is under a duty to contact a student's parents whenever a student is sent to the principal's office. Further, even if such a duty exists, it is unclear how a failure to contact J.M.'s mother caused any harm to J.M. Because the Complaint does not allege facts that adequately establish the existence of a duty, causation, or harm, no plausible negligence claim is stated.

### b.    Cal. Gov. Code § 820.8 Immunity

Cal. Gov. Code § 820.8 provides in relevant part that, except as may otherwise be provided by statute, "a public employee is not liable for an injury caused by the act or omission of another person." Cal. Gov't Code § 820.8. Section 820.8, however, does not shield a public employee from his own allegedly wrongful acts. Id. ("Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act."); Weaver v. State of Cal., 63 Cal.App.4th 188, 202 (1998). Section 820.8 has been held to be inapplicable to claims against a supervisor for his own improper or negligent supervision and training. E.g. Rodriguez v. County of L.A., 891 F.3d 776, 799 (9th Cir. 2018); Estate of Jackson v. City of Modesto, 2021 U.S. Dist. LEXIS 199638, *61-*62 (E.D. Cal. Oct. 14, 2021); Figueroa v. Kern Cty., 2021 U.S. Dist. LEXIS 41068, *22-*23 (E.D. Cal. Mar. 3, 2021) (and cases cited therein).

Here, the claims against Alvarado are limited to his failure to contact J.M.'s mother and his improper supervision of O'Brien. See Complaint ¶ 50. While the Complaint does not allege plausible claims, the bases for the claims alleged are all actions by Alvarado – Alvarado's failure to contact J.M.'s mother and Alvarado's failure to properly supervise O'Brien. The Court does not read the negligence claim as attempting to impose vicarious liability against Alvarado for the actions of O'Brien. Therefore, § 820.8 has no application to this case. Estate of Jackson, 2021 U.S. Dist. LEXIS 199638 at *61-*62.

### c.    Cal. Gov. Code § 820.2

The immunity of Government Code § 820.2 "is reserved for those 'basic policy decisions

[which have] . . . been [expressly] committed to coordinate branches of government,' and as to which judicial interference would thus be 'unseemly.'" Liberal v. Estrada, 632 F.3d 1064, 1084 (9th Cir. 2011) (quoting Gillan v. City of San Marino, 147 Cal.App.4th 1033, 1051 (2007)). Decisions that do not rise to the level of "basic policy decisions," but instead are merely "operational" decisions, do not receive immunity under § 820.2. See Liberal, 632 F.3d at 1084. "[T]o obtain immunity for discretionary or policy decisions, 'the [defendant] must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in discretionary activity is irrelevant if, in a given case, the employee did not render a considered decision.'" Hampton v. County of San Diego, 62 Cal.4th 340, 353-54 (2015) (quoting Johnson v. State of Cal., 69 Cal.2d 782, 794 n.8 (1968)).

Alvarado argues that he is entitled to immunity because the basis for the negligence claims concern disciplinary matters. California courts appear to view school disciplinary decisions as being within the scope of § 820.2. See Doe v. Manhattan Beach Unified Sch. Dist., 2020 U.S. Dist. LEXIS 88891, *18-*19 (C.D. Cal. May 19, 2020); Kemmerer v. County of Fresno, 200 Cal. App. 3d 1426, 1438 (1988); see also Thompson v. Sacramento City Unified Sch. Dist., 107 Cal. App. 4th 1352, 1361 (2003) (decision to expel or readmit is protected by § 820.2). California federal courts, however, seem to disagree and hold that § 820.2 does not provide a blanket immunity to school disciplinary decisions. See Wormuth v. Lammersville Union Sch. Dist., 305 F.Supp.3d 1108, 1131 (E.D. Cal. 2018) (citing C.B. v. Sonora Sch. Dist., 691 F.Supp.2d 1123, 1149 (E.D. Cal. 2009); Corales v. Bennet, 488 F.Supp.2d 975, 990 (C.D. Cal. 2007)).

Assuming for purposes of this motion that § 820.2 would apply to Alvarado's disciplinary decisions, the Court is not satisfied that the negligence claim is based on a disciplinary decision. Not contacting J.M.'s mother has nothing to do with J.M.'s discipline. Further, supervising O'Brien is conduct by Alvarado that is directed at O'Brien. Without more specific allegations, the Court cannot hold that Alvarado's supervision of O'Brien constitutes disciplinary actions against J.M. While J.M. was sent to Alvarado's office for disciplinary reasons (he was allegedly acting disruptive in class), that does not mean that every action that occurred in Alvarado's office was a "disciplinary" action. Thus, the Court cannot hold at this time that § 820.2 applies.

### 3. *Noerr-Pennington* Doctrine

The *Noerr-Pennington* doctrine derives *from E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965), which held that private actors are immune from antitrust liability for petitioning the government. Sanders v. Brown, 504 F.3d 903, 912 (9th Cir. 2007). *Noerr-Pennington* has been extended beyond the antitrust context and "stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the [First Amendment] Petition Clause." Nunag-Tanedo v. East Baton Rouge Par. Sch. Bd., 711 F.3d 1136, 1139 (9th Cir. 2013); Sosa v. DIRECTV, Inc., 437 F.3d 923, 931 (9th Cir. 2006). "The essence of the *Noerr-Pennington* doctrine is that those who petition any department of the government for redress are immune from statutory liability for their petitioning conduct." Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991, 1006-07 (9th Cir. 2008); Sosa, 437 F.3d at 929. "[B]ecause *Noerr-Pennington* protects federal constitutional rights, it applies in all contexts," and thus, applies to state and federal claims. Theme Promotions, 546 F.3d at 1007. Petitioning activity includes litigation in court, including the filing of documents in court, as well as conduct that is incidental to the prosecution of a lawsuit. See Microsoft Corp. v. Motorola, Inc., 795 F.3d 1024, 1047 (9th Cir. 2015); Sanders, 504 F.3d at 912; Sosa, 437 F.3d at 934. Petitioning activity also includes a citizen's summoning or communicating with the police. See Venetian Casino Resort, L.L.C. v. NLRB, 793 F.3d 85, 90 (D.C. Cir. 2015); Forro Precision, Inc. v. IBM, 673 F.2d 1045, 1060 (9th Cir. 1982).

In this case, application of *Noerr-Pennington* is limited at best and appears to depend on whether Alvarado was O'Brien's supervisor. If Alvarado is O'Brien's supervisor, then Alvarado summoning and communicating with O'Brien is nothing more than a command within a hierarchy; it is not a citizen communicating or attempting to summon a third party police officer. No party has cited authority that assess *Noerr-Pennington* in a such a situation. Nevertheless, the Court has determined, based primarily on O'Brien's status as a police officer who is assigned to the PUSD as a school resource officer, that the Complaint does not plausibly allege that Alvarado had the authority to supervise O'Brien. Therefore, as the Complaint currently stands, Alvarado is

not O'Brien's supervisor. If O'Brien is not Alvarado's supervisor, then the act of Alvarado summoning O'Brien to help deal with J.M. appears to be a summoning or communication by a citizen to a police officer that is protected by *Noerr-Pennington*. See Venetian Casino, 793 F.3d at 90; Forro Precision, 673 F.2d at 1060. Therefore, there can be no liability premised on Alvarado summoning and communicating with O'Brien. See id. No other conduct by Alvarado appears to be "petitioning activity" for purposes of *Noerr-Pennington*. Because the Court has granted J.M. leave to amend to include additional allegations that demonstrate Alvarado's ability to supervise O'Brien, dismissal based on application of *Noerr-Pennington* will be with leave to amend.

### 4. Coverdell Act Immunity

The purpose of the Paul D. Coverdell Teacher Protection Act of 2001 (20 U.S.C. § 7941 *et seq.*) is to "provide teachers, principals, and other school professionals the tools they need to undertake reasonable actions to maintain order, discipline, and an appropriate educational environment." 20 U.S.C. § 7942; Wormuth, 305 F.Supp.3d at 1131; C.B., 691 F.Supp.2d at 1149. Coverdell Act immunity applies to actions by school officials that are aimed at controlling or disciplining a student or maintaining order or control in the school. See 20 U.S.C. § 7946(a); Wormuth, 305 F.Supp.3d at 1131; Dennis v. Board of Educ., 21 F.Supp.3d 497, 502 (D. Md. 2014). In relevant part, the Coverdell Act provides:

> [N]o teacher in a school shall be liable for harm caused by an act or omission of the teacher on behalf of the school if—
>
> (1) the teacher was acting within the scope of the teacher's employment or responsibilities to a school or governmental entity;
>
> (2) the actions of the teacher were carried out in conformity with Federal, State, and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school;
>
> (3) if appropriate or required, the teacher was properly licensed, certified, or authorized by the appropriate authorities for the activities or practice involved in the State in which the harm occurred, where the activities were or practice was undertaken within the scope of the teacher's responsibilities;
>
> (4) the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the teacher; and
>
> (5) the harm was not caused by the teacher operating a [vehicle for which an

14

operator's license and insurance are required by state law]. 20 U.S.C. § 7946(a); C.B., 691 F.Supp.2d at 1149; see also Wormuth, 305 F.Supp.3d at 1131. The term "teacher" includes a "teacher, instructor, principal, or administrator." 20 U.S.C. § 7943(6).

With respect to the § 1983 Fourth Amendment claim against Alvarado, Coverdell Act immunity does not apply. A constitutional violation based on excessive force is alleged. If J.M. sufficiently amends the complaint to allege a plausible § 1983 supervisory claim against Alvarado, the allegations would be that Alvarado violated the Fourth Amendment. That is, the allegations would show conduct that is not in conformity with federal law. By its express terms, Coverdell Act immunity would not apply. See 20 U.S.C. § 7946(a)(2); R.D. v. Concord Cmty. Schs., 2021 U.S. Dist. LEXIS 131963, *25 (N.D. Ind. July 15, 2021); Dennis, 21 F.Supp.3d at 502. Therefore, Coverdell Act immunity does not affect the dismissal of the § 1983 claim without prejudice.

With respect to the negligence claim, Coverdell Act immunity has been applied to state law claims. E.g. C.B., 691 F.Supp.2d at 1149 (finding Coverdell Act defeated a state law claim for intentional infliction of emotional distress). As discussed above, there are two acts of negligence alleged – failing to contact J.M.'s mother and improper supervision of O'Brien. Alvarado argues that Coverdell Act immunity applies because his conduct related to student discipline. However, failing to contact J.M.'s mother has nothing to do with disciplining J.M. Further, as discussed above, supervising O'Brien is conduct by Alvarado that is directed at O'Brien. Without more specific allegations, the Court cannot hold that Alvarado's supervision of O'Brien constitutes disciplinary actions against J.M. Again, even though J.M. was sent to Alvarado's office for disciplinary reasons, not every action by Alvarado was per se a "disciplinary" action. Therefore, the Court cannot hold at this time that Coverdell Act immunity affects the dismissal of the negligence claims.

5.      Punitive Damages

"[W]hile malice, intent, and knowledge (and other mental states) may be alleged generally under Rule 9(b), factual allegations must still be sufficient to meet the standard of *Iqbal* to adequately support a request for punitive damages." Warnshuis v. Bausch Health U.S., LLC,

2020 U.S. Dist. LEXIS 107136, *39 (E.D. Cal. June 18, 2020).  A request for punitive damages is not a stand alone cause of action, it is merely a type of remedy that is dependent upon a viable cause of action.  <u>Marroquin v. Pfizer, Inc.</u>, 367 F.Supp.3d 1152, 1168 (E.D. Cal. 2019); <u>Bear v. Ohio Dept. of Rehab. & Corr.</u>, 156 F.Supp.3d 898, 907 (N.D. Ohio 2016); <u>Carino v. Standard Pac. Corp.</u>, 2014 U.S. Dist. LEXIS 50611, *26 (E.D. Cal. Apr. 9, 2014).   Here, because both the causes of action against Alvarado have been dismissed, the Court dismisses the punitive damages request against him as well.  <u>See</u> <u>id.</u>

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant Alvarado's motion to dismiss (Doc. No. 19) is GRANTED;
2. The first cause of action, the seventh causes of action, and the request for punitive damages against Defendant Alvarado are DISMISSED with leave to amend;
3. No later than twenty-eight (28) days from service of this order, Plaintiff may file an amended complaint that is consistent with the analysis of this order;
4. If Plaintiff fails to timely file an amended complaint, then leave to amend will be automatically withdrawn without further notice and Defendant Alvarado will be terminated from this case without further notice.

IT IS SO ORDERED.

Dated:   November 9, 2021                    _____
                                              SENIOR DISTRICT JUDGE